IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW JERSEY

| ROBERT DUFF,            | HONORABLE JEROME B. SIMANDLE |
|                Plaintiff, |                              |
|     v.                  | Civil Action                 |
|                         | No. 16-1095 (JBS/JS)         |
| WAL-MART STORES EAST, LP |                              |
|                Defendant. | **OPINION**                  |

APPEARANCES:

Christopher J. Culleton, Esq.
Joseph P. Guzzardo, Esq.
Swartz Culleton PC
547 E. Washington Ave.
Newtown, PA 18940
     Attorneys for Plaintiff

Gwyneth Rhian Williams, Esq.
Patrick J. McDonnell, Esq.
McDonnell & Associates, P.C.
500 Route 70 West
Cherry Hill, NJ 08002
     Attorneys for Defendant

**SIMANDLE, District Judge:**

I.   **INTRODUCTION**

   In this case, Plaintiff Robert Duff seeks compensation for an injury sustained after allegedly tripping over fishing wire at the Turnersville, New Jersey location of Defendant Wal-Mart Stores East, LP ("Wal-Mart"). Before the Court is Defendant Wal-Mart's motion for summary judgment. For the reasons that follow, the Court will deny Defendant's motion.

**II. BACKGROUND**[1]

Plaintiff Robert Duff walked into Wal-Mart at 1:30 pm on Friday December 12th, 2014, and walked straight to the automotive department. (Deposition of Robert Duff (``Duff Dep.'') at 30:9-13, 31:2-7.) Approximately ten to fifteen minutes later, Plaintiff was turning out of the store's main center aisle into the automotive aisle with his cart in front of him when his feet stopped moving, his ``legs got pulled out,'' and he ``felt a tweak.'' (Id. at 35:20, 44:2-3, 49:6-14.) Plaintiff looked down but couldn't see anything wrapped around his feet until he reached down and physically grabbed fishing wire he had become tangled in. (Id. at 37:1-3.) Plaintiff did not observe any fishing wire before the incident. (Id. at 33:19-21.) He also did not notice any other customers or employees in the automotive aisle. (Id. at 35:1-5,9-17.)

After Plaintiff tripped, he looked up and noticed a woman in the same aisle, approximately fifteen to twenty feet away, gathering up the wire and handing it to an employee in the next department over. (Id. at 38:20, 40:17-18.) After Plaintiff untangled himself, he went to the customer service desk, and spoke with Customer Service manager Aapria Williams. (Id. at 51:11-13.) Approximately fifteen minutes later, Ms. Williams wrote an incident report and gave it to her manager. (Deposition of Aapria Williams (``Williams Dep.'') at 13:21-24, 14:3-5.) Ms.

---

[1] The Court distills this undisputed version of facts from the parties' statements of material facts, affidavits, and exhibits, and recounts them in a manner most favorable to Plaintiff, as the party opposing summary judgment.

2

Williams testified that when there is a customer incident, it is Wal-Mart's accident protocol for management to take pictures of the area, have witnesses fill out statements, and burn a disk of any video footage captured for the customer's file. (Id. at 17:12-25, 18:1.) Wal-Mart has cameras everywhere inside except the bathrooms. (Id. at 12:4-6.) However, in this case, the line on Plaintiff's incident report that asks whether video footage is available was left blank. (Deposition of Joann Joseph (''Joseph Dep.'') at 25:5-12.)

Assistant Manager Jennifer Mentzer, who was on duty at the time, walked back to observe where the incident occurred. (Deposition of Jennifer Mentzer (''Mentzer Dep.'') at 14:3-4.) However, contrary to Wal-Mart's accident protocol, Ms. Mentzer does not recall taking pictures of the area or checking for video footage. (Id. at 14:1-18.) In her seven years as a Wal-Mart employee she had never had an incident where someone claimed they were injured by fishing wire. (Id. at 16:16-18.)

Plaintiff decided not to take an ambulance from the store but rather would wait to see how he felt the next day. (Duff Dep. at 51:23-25.) He left the store after purchasing his items and alerting the store employees of the incident and returned the next day to file an official report. (Id. at 50:8-19.)

This case was filed in the United States District Court for the District of New Jersey on February 25, 2016. [Docket Item 1.] After the parties exchanged discovery, Defendant filed a motion

3

for summary judgment [Docket Item 15.]² Plaintiff filed an opposition brief [Docket Item 18] and Defendant filed a reply. [Docket Item 19.] The Court will decide this motion without holding oral argument pursuant to Fed. R. Civ. P. 78.

**III. STANDARD OF REVIEW**

At summary judgment, the moving party bears the initial burden of demonstrating that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). In reviewing a motion for summary judgment, the court is required to examine the evidence in light most favorable to the non-moving party, and resolve all reasonable inferences in that party's favor. Scott v. Harris, 550 U.S. 372, 378 (2007); Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014).

A factual dispute is material when it ''might affect the outcome of the suit under the governing law,'' and genuine when ''the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'' Anderson, 477 U.S. at 248. The

---

² Also pending at this time are motions before Magistrate Judge Joel Schneider about spoliation of evidence which have no bearing on the present motion for summary judgment. Whether or not Mr. Duff is ultimately entitled to a negative inference from the absence of video footage of his accident, there are disputes of fact in this case that require a jury's consideration.

4

non-moving party ''need not match, item for item, each piece of evidence proffered by the movant,'' but must simply present more than a ''mere scintilla'' of evidence on which a jury could reasonably find for the non-moving party. Boyle v. Cnty. Of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Anderson, 477 U.S. at 252).

**IV. DISCUSSION**

In a negligence action under New Jersey law, a plaintiff must establish ''(1) that the defendant owed a duty of care; (2) that the defendant breached that duty; (3) actual and proximate causation; and (4) damages.'' Fernandes v. DAR Development Corp., 119 N.J. 878, 885-86 (N.J. 2015). In this case, as a commercial premises owner, Defendant owed Plaintiff, a business invitee, a duty to ''guard against any dangerous conditions on the property that the owner either knows about or should have discovered, and to conduct a reasonable inspection to discover latent dangerous conditions.'' Stelluti v. Casapenn Enters., LLC, 1 N.J. 678, 691 (N.J. 2010) (citing Hopkins v. Fox & Lazo Realtors, 625 N.J. 1110 (N.J. 1993)) (internal citations and punctuation omitted). In addressing the issue of breach, ''an injured plaintiff asserting a business owners breach of duty of care must prove, as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident.'' Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 563 (N.J. 2003)

New Jersey's mode-of-operation rule is an exception to the general rule that the plaintiff bears the burden of proving all

elements of his negligence action, and is implicated if the injury occurs in a self-service setting ''in which customers independently handle merchandise without the assistance of employees.'' Prioleau v. Kentucky Fried Chicken, Inc., 223 N.J. 245, 262 (N.J. 2015). The rule applies only to sections of a store that are affected by self-service, although this is not limited to the produce aisle of supermarkets and other traditional self-service areas. Id.; see also O'Shea v. K Mart Corp., 304 N.J. Super. 489, 495 (App. Div. 1997) (holding that self-service areas are not limited in scope to the produce aisles of a grocery store). Additionally the rule may apply to situations where either the customer or employee previously handled the product or equipment, or the risk of injury is inherent in the merchandise itself. Prioleau, 233 N.J. at 263. If applied, the plaintiff is relieved of the burden of showing the defendant's actual or constructive knowledge of the dangerous condition, creating an inference of negligence and shifting the burden to the defendant, who must prove they exercised due care. Id. Absent an explanation by the defendant, the issue of due care is determined by a jury. Bozza v. Vornado, Inc., 42 N.J. 355, 359 (N.J. 1964).

In this case, the mode-of-operation rule applies because Wal-Mart's sporting goods and automotive departments are self-service sections of the store. Plaintiff did not see any employees, nor did any employees approach him, in the approximately ten minutes he conducted his shopping. (Duff Dep. at 35:9-17.) This lack of supervision is indicative of Wal-Mart's

intention that customers are free to browse, independently examine, and remove merchandise from the shelves. See O'Shea, 304 N.J. Super. at 484 (holding that the lack of sales associates in the fifteen minutes a customer was conducting her shopping indicated K Mart's intent that customers remove and reshelf golf bags in the sporting goods department of the store). This created an inherent risk that customers might mishandle merchandise, by, for example, perhaps not properly reeling in fishing wire and instead leaving it on the floor of the aisle. See Craggan v. Ikea United States, 332 N.J. Super. 53, 63 (App. Div. 2000) (''IKEA's mode of operation to facilitate self-service removal of purchased items created a reasonable probability that the string would not be properly coiled in its container after each use, would accumulate in the loading area, and create a tripping hazard for anyone using the area.'').

There is a clear nexus between the self-service section of Wal-Mart and the injury that allegedly occurred. Although the parties dispute where, exactly, Plaintiff's accident occurs, that dispute is immaterial at this point because Wal-Mart does not restrict customers from removing merchandise from its designated departments, and can anticipate items being carried around the store. See Devincentis v. Wal-Mart Stores, Inc., Civil No. 09-3138, 2010 U.S. Dist. LEXIS 47234, *1 (D.N.J. May 12, 2010) (stating that the mode-of-operation rule applied in a slip and fall case in an area of the store where drinks were not sold because Wal-Mart does not restrict customers from carrying their drinks outside the self-service section of the store).

Defendant argues that Plaintiff cannot prove that Wal-Mart had actual or constructive knowledge of the wire because he cannot show how long the wire had been in the aisle or how it had gotten there prior to Plaintiffs injury. Defendant's emphasis on actual or constructive knowledge is misplaced because the mode-of-operation rule applies to this case and Plaintiff need not show that Defendant had actual or constructive knowledge of a hazard. Likewise, Defendant's position that the mode of operation rule cannot apply because Plaintiff has adduced no evidence that Wal-Mart was aware of a dangerous condition warranting application of the rule is incorrect. (Defendant's Reply Brief at 6.) Actual knowledge is not a prerequisite to the implication of the mode-of-operation rule. See <u>Nisivoccia</u>, 175 N.J. at 563 (holding that the Plaintiff need not show actual or constructive knowledge in circumstances where a dangerous condition is likely to occur due to the nature of the business). Rather, the rule is applied when injuries occur in self-service areas of a store, precisely in situations when the Plaintiff cannot prove actual or constructive knowledge. See <u>Balsamides v. Wal-Mart Stores, Inc.</u>, Civil No. 06-5676, 2011 U.S. Dist. LEXIS 58009, *1-2 (D.N.J. May 31, 2011) (''The burden shifting of the mode-of-operation rule recognizes that a plaintiff may not know the source of the dangerous condition that caused his or her injury.'').

Having determined that the mode-of-operation rule applies to this case, Plaintiff is relieved of his burden of showing that Wal-Mart had actual or constructive knowledge of the dangerous condition prior to the incident, and is afforded an inference of

negligence. Wal-Mart's production of general safety policies, calling for safety sweeps on a regular basis and immediate cleaning of spills and tripping hazards, is not sufficient to defeat its inference of negligence and grant summary judgment. See O'Shea, 304 N.J. Super. at 493 (holding that a manager's testimony of store employees routine inspections during business hours was not enough to grant summary judgment and that whether the store used due care was a question of fact for the jury). Here, as in O'Shea, a reasonable jury could conclude that given the self-service nature of its business, Defendant did not conduct reasonable care in attempting to prevent injuries. Defendant's motion for summary judgment will be denied.

## V. CONCLUSION

An accompanying order will be entered.


 **June 19, 2017**  　　　　　　　　　　**s/ Jerome B. Simandle**
Date　　　　　　　　　　　　　　　　　JEROME B. SIMANDLE
　　　　　　　　　　　　　　　　　　　U.S. District Judge